IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMON ANDERSON, | No. 2:24-CV-0483-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| KEVIN SMITH, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,

1

concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Kevin Smith, a physician and surgeon at Mule Creek State Prison (MCSP); (2) Michael Ullery, a physician and surgeon at MCSP; (3) Bhupinder Lehil, a chief physician and surgeon at MCSP; (4) Wesley Vaughn, a chief physician and surgeon at MCSP; and (5) Wong, whose position is not identified. See ECF No. 1, pgs. 1, 2. Plaintiff alleges the events in the complaint occurred at MCSP. See id. at 1. Plaintiff claims the facts set for the in his complaint give rise to claims under the Eighth Amendment for disregard of risk of harm and under the First Amendment for retaliation. See id. at 3, 4.

Plaintiff states that he has had six prior back surgeries, all being a mixture of laminectomies and discectomies. See id. at 6. Until June 1, 2023, Plaintiff was living a healthy independent life with minimal pain. See id. In June 2023, Plaintiff began experiencing agonizing and debilitating pain in his low back, numbness in his groin down his legs, and weakness in the left leg with intermittent urinary incontinence. See id. About two months later, the urinary incontinence became permanent. See id.

Plaintiff states that he was sent to the emergency room on June 8, 2023, due to new symptoms and numbness in his groin. See id. Plaintiff states that he had spilled coffee in his lap "severely burning his penis all without feeling it." Id. And MRI was performed and Plaintiff was discharged with pain medication and a referral for a neurological consult. See id. Plaintiff states he was never given the pain medication. See id.

///

2

Plaintiff states that he was seen by Defendant Lehil a few days later. See id. At this visit, Plaintiff explained to Defendant Lehil that he was in excruciating pain which prevented him from sleeping, bathing, and even wiping himself after a bowel movement. See id. He further shared with Defendant Lehil his concerns about ground numbness as he experienced this symptom in the past and surgery was required. See id. Plaintiff was told by Defendant Lehil that a referral would be ordered for Plaintiff to see a neurosurgeon and that that Plaintiff would be provided a "tapering dose" of prednisone for 14 days. Id. Plaintiff informed Defendant Lehil that, as a recovering heroin addict, he needed surgery scheduled as soon as possible to avoid the possibility of a relapse on "hard pain medication." Id. at 6-7.

On Jun 30, 2023, Plaintiff was transported to see Dr. Thaiyananthan, a neurosurgeon. See id. at 7. Plaintiff was told that a lumbar fusion surgery would help Plaintiff and improve his quality of life. See id. According to Plaintiff, the doctor ordered the surgery. See id. Plaintiff then returned to the prison and was seen by Defendant Lehil, his primary care provider. See id. According to Plaintiff, Defendant Lehil informed Plaintiff that the surgery would happen soon. See id. Defendant Lehil informed Plaintiff that a request for services would need to be submitted. See id. Plaintiff states that the request for services was submitted on July 10, 2023. See id. The referenced document is filed separately at ECF No. 5.[1] Plaintiff states that Defendant Lehil failed to include on the form all of Plaintiff's symptoms and how the worsening condition was preventing Plaintiff from sleeping, dressing, and finishing college courses. See ECF No. 1, pg. 7. Defendant Lehil also failed to explain about Plaintiff's groin numbness or urinary incontinence. See id. Ultimately the request for services submitted by Defendant Lehil was denied by who is believed by Plaintiff to be Defendant Smith, who never examined Plaintiff. See id.

///

///

---

[1] Plaintiff's filing at ECF No. 5 is docketed as a motion to file a supplemental exhibit to the complaint. This motion will be denied because it is unnecessary to support allegations in a complaint by way of attached exhibits. Further, the document is referenced in the complaint and, to the extent the complaint relies on this document, the Court may judicially notice it because it is not reasonably in dispute.

Plaintiff states that he was left to deal with the "ongoing torture" from July 10, 2023, until October 20, 2023. Id. During this time, Plaintiff states that he never got more than two hours of sleep at a time and would go to the medical clinic and beg for assistance. See id. According to Plaintiff, he was told by Klatt (who is referred to as a "defendant" but not named in the caption or list of defendants) that he would send Plaintiff to the hospital when Plaintiff "could not take it no more." Id. at 7-8. Plaintiff also states that he was consistently told by Klatt that the surgery would happen soon. See id. at 8.

Plaintiff alleges that, by the end of October 2023, he was in so much pain that "he wanted to just die." Id. Plaintiff reported to the medical clinic and informed Klatt that he was ready to go to the hospital as promised, but that Klatt "did nothing but send plaintiff to talk to an unknown Doctor who did nothing but treat plaintiff as a drug seeking nuisance." Id.

Next, Plaintiff alleges that Defendant Lehil failed to inform Plaintiff that the surgery request had been denied until October 20, 2023. See id. Plaintiff informed Defendant Lehil that he had already filed an inmate grievance concerning the situation. See id. According to Plaintiff, Defendant Lehil then sent Plaintiff back to see the outside surgeon, who told Plaintiff that he didn't understand why surgery had not yet been performed. See id.

On October 23, 2023, Plaintiff was seen by Defendant Wong, also apparently a prison doctor, in Defendant Lehil's absence. See id. Plaintiff states that at no time did Defendant Wong perform an examination. See id. On October 26, 2023, Plaintiff was again seen by Defendant Lehil who informed Plaintiff that another request for services had to be submitted because Defendant Ullery had denied the prior request after Defendant Wong put in Plaintiff's chart that "there was nothing wrong with plaintiff." Id. at 8-9. Plaintiff believes this occurred when Defendant Ullery was told by Klatt that there was nothing wrong with plaintiff "so Ullery sent Dr. Wong to see plaintiff and conspired to lie in plaintiff['s] medical record in order to maliciously stop plaintiff's surgery or it was to cover up their behind from liability when they were questioned about the 602 [inmate grievance]." Id. In mid-November 2023, Plaintiff was informed by Defendant Lehil that the second request for services had also been denied and that Defendant Lehil said "we are done here, now go!" Id.

Finally, Plaintiff asserts facts which he claims show retaliation. See id. According to Plaintiff, all through December 2023 he called and emailed everyone he could in order to get some help. See id. In January 2024, Defendant Lehil saw Plaintiff and Plaintiff told him that he was going to sue him. See id. Plaintiff states that, in response, Defendant Lehil said: "I am shipping you out so another Dr. has to deal with you." Id. Plaintiff also states that Defendant Lehil submitted a third request for surgery. See id. Plaintiff states that, a few days later, he was told by Correctional Counselor Mendoza, who is not a named defendant, that Plaintiff was being transferred "because defendant Lehil ordered it." Id. Plaintiff informed Mendoza that this was being done in retaliation and Plaintiff states Mendoza stopped the transfer. See id.

## II. DISCUSSION

The Court finds that Plaintiff has stated a cognizable Eighth Amendment claim against Defendant Lehil based on alleged deliberate indifference to Plaintiff's medical needs, specifically the need for surgery. The Court also finds that Plaintiff would state a cognizable Eighth Amendment medical care claim against Klatt if this individual were named as a defendant to the action. Plaintiff also appears to state a cognizable Eighth Amendment medical care claim against Defendant Wong, who allegedly entered a chart note that there was nothing wrong with Plaintiff despite having never examined Plaintiff. It also appears that Plaintiff states a cognizable Eighth Amendment medical care claim against Defendant Ullery, who is alleged to have conspired with other defendants to falsify Plaintiff's medical records to indicate Plaintiff had nothing wrong. Plaintiff's claim against Defendant Smith, who is alleged to have denied the request for surgery despite never examining Plaintiff, also appears to be a cognizable medical care under the Eighth Amendment.

The complaint is deficient as to Defendant Vaughn, as to whom no facts are alleged. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he

does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Here, Plaintiff's complaint is simply devoid of any factual allegations as to Defendant Smith. Plaintiff will be provided an opportunity to amend to allege facts as to Defendant Smith.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

///
///
///

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to file a supplemental exhibit, ECF No. 5, is DENIED as unnecessary.

2. Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

**Dated: March 14, 2024**

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE