IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMON ANDERSON,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>KEVIN SMITH, et al.,<br><br>　　　　Defendants. | No. 2:24-CV-0483-DMC-P<br><br><br>ORDER<br><br>and<br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's motion for injunctive relief. See ECF No. 2.

### I. BACKGROUND

　　A.　**Plaintiff's Allegations**

　　　　This action proceeds on Plaintiff's first amended complaint. See ECF No. 11. Plaintiff names the following defendants: (1) Kevin Smith, a physician and surgeon at Mule Creek State Prison (MCSP); (2) Michael Ullery, a physician and surgeon at MCSP; (3) Bhupinder Lehil, a physician and surgeon at MCSP; (4) Wesley Vaughn, chief physician and a surgeon at MCSP; Peter Lee, a physician and surgeon at MCSP; (6) Kevin Yang, a registered nurse at MCSP; (7) Klatt, a registered nurse at MCSP; and (8) Gavin Newsom, Governor of California.

1

See id. at 2-3. Plaintiff alleges facts in this amended complaint identical to those in his initial complaint. See ECF No. 1. The initial complaint only brought claims against Smith, Ullery, Lehil, Vaughn, and Wong. See id. The Court found that Plaintiff had presented cognizable Eighth Amendment medical deliberate indifference claims against Ullery, Lehil, Wong, and Klatt, although Klatt was not named as a defendant in the initial complaint. See ECF No. 10.  Plaintiff was granted leave to amend his claims against Defendant Vaughn.  See id.

In addition to the facts alleged in the initial complaint, Plaintiff has incorporated all of the facts and medical documents from a separately filed emergency motion for preliminary injunction. See ECF. No. 2; ECF No. 11, pgs. 14-31. Facts alleged in the emergency motion are consistent with the facts alleged in the rest of the complaint and do not set forth any substantial additional facts. See ECF No. 11, pgs. 14-31 Plaintiff has further amended his original complaint to include facts alleging constitutional rights violations by Defendants Ullery, Yang, Smith, Vaughn, Lee, and Newsom. See id. at 12-13. Finally, Plaintiff has included documents related to denial of medical services. See id. at 32-40. Plaintiff now alleges violations of his rights under the Eighth Amendment for deliberate indifference to medical needs, under the First Amendment for retaliation, and under the Fourteenth Amendment for unequal treatment. See id. at 9-13.

Plaintiff claims that, prior to June 1, 2023, he had had six back surgeries, which were a combination of "Laminectomies [and] Disectomies [sic]" See id. at 9. In June 2023, Plaintiff began experiencing severe lower back pain, numbness in his groin area and left leg, nerve pain in both legs, and incontinence. See id. On June 8, Plaintiff was taken to the emergency room when he suffered severe burns in his groin area that he was unable to feel. See id. Plaintiff was referred to a neurosurgeon for a consultation and prescribed pain medication, which Plaintiff claims he did not receive. See id. Plaintiff later met with Defendant Lehil, his primary care physician, and described his symptoms. See id. Defendant Lehil referred Plaintiff to a neurosurgeon, gave him a cane and a wheelchair, and provided Plaintiff with a 14-day prescription for Prednisone. See id. at 9-10. Plaintiff expressed at that time that he wished to have the surgery as he was a recovering heroin addict and wanted to avoid relying on "hard pain medication." Id. at 10.

On June 30, Plaintiff met with a neurosurgeon, Dr. Thaiyananthan, who recommended Plaintiff undergo a lumbar fusion. See id. at 10. Plaintiff later met again with Defendant Lehil, who submitted a Request for Services (RFS) on July 10. See id. Plaintiff claims that this RFS did not include all information relevant to his condition, including Plaintiff's physical limitations, numbness, or incontinence. See id. The RFS was later denied by someone Plaintiff believes to be Defendant Smith, who had never physically examined Plaintiff. See id.

From July 10 until approximately October 20, Plaintiff claims to have experienced "ongoing torture" and never got more than an hour or two of sleep at a time. See id. During this time, Plaintiff claims to have begged Defendant Klatt for help. See id. Plaintiff claims Defendant Klatt would tell Plaintiff that the surgery would happen soon and that he would send Plaintiff to the hospital when asked. See id. at 10-11. In late October, Plaintiff informed Defendant Klatt that he would like to go to the hospital, but Defendant Klatt instead sent him to an unknown doctor who treated plaintiff as "a drug seeking nuisance." Id. at 11.

In early October, Plaintiff's incontinence became persistent, and Plaintiff submitted a 602 inmate grievance for denying Plaintiff the surgery. See id. On October 20, Plaintiff met again with Defendant Lehil, who informed Plaintiff that the RFS had been denied. See id. Plaintiff informed Defendant Lehil that he had filed a grievance with the prison. See id. Defendant Lehil sent Plaintiff back to meet again with Dr. Thaiyanathan. See id. Plaintiff claims Dr. Thaiyanathan did not understand why the surgery was not performed and said he would order it again. See id.

On October 23, 2023, Plaintiff met with Defendant Wong who Plaintiff claims did not physically examine him. See id. On October 26, Plaintiff met with Defendant Lehil, who informed Plaintiff that he would need to submit another RFS as Defendant Ullery had denied the previous RFS because Defendant Wong had written in Plaintiff's chart that there was nothing wrong with him. See id. at 11-12. Plaintiff believes that Defendant Klatt told Defendant Ullery that nothing was wrong with Plaintiff. See id. at 12. Plaintiff alleges that Defendant Ullery sent Defendant Wong to see Plaintiff and conspired to lie to prevent Plaintiff's surgery to shield them from liability related to the previously filed inmate grievance. See id.

At the meeting on October 26, Defendant Lehil informed Plaintiff that he would submit another RFS. See id. Plaintiff insisted that Defendant Lehil include all of his symptoms, including the incontinence, lack of sleep, and torturous pain. See id. However, Plaintiff claims that Defendant Lehil did not include the correct information. In mid-November, Defendant Lehil informed Plaintiff that the new RFS had been denied. See id. At that point, Plaintiff claims to have been suffering from "severe depression, anxiety, pain, and hopelessness." Id. When Plaintiff requested a urologist to address his incontinence, Plaintiff claims Defendant Lehil responded with "we are done here now go!" Id.

In January 2024, Plaintiff met again with Defendant Lehil. See id. Plaintiff claims Defendant Lehil told him "I am shipping you out so another Dr. has to deal with you." Id. Defendant Lehil also submitted another RFS. See id. A few days after that meeting, Plaintiff was informed by Correctional Counselor Mendoza that he was being transferred on Defendant Lehil's orders. See id. When Plaintiff informed Mendoza of what Defendant Lehil had said, Mendoza agreed to prevent the transfer. See id.

Plaintiff alleges that "Defendants have all shown their willingness to lie and cover up and retaliate all to escape liability for not providing plaintiff with a surgery that if not done will cause irreparable harm" Id. Plaintiff does not offer additional factual allegations to support this claim. Plaintiff believes that Defendants Ullery, Yang, Smith, Vaughn, and Lee comprise the "SMART" committee responsible for denying Defendant Lehil's RFS's. See id. at 12-13. Plaintiff claims that each denial states a different reason for denying the surgery, which reflects an intention to torture Plaintiff. See id. at 13. Plaintiff additionally alleges that Defendant Vaughn told Plaintiff to take advantage of the therapies offered to him. See id. When asked what therapies he was referring to, Defendant Vaughn responded, "we are done here." Id.

Finally, Plaintiff claims that Defendant Newsom allows transgender inmates to receive elective surgeries for gender-affirming care despite the unnecessary risks involved. See id. Plaintiff claims that this is in contrast to decisions made regarding his health and the recommendations of Dr. Thaiyanathan. See id.

///

4

B.     **Procedural History**

On June 24, 2024, Plaintiff voluntary dismissed Defendants Lee and Newsom. See ECF No. 12.  On July 15, 2024, the Court directed service on the remaining defendants.  See ECF No. 15.  Summons has been issued and the Court is monitoring for service of process and a response to the first amended complaint, which is not yet due.

## II.  DISCUSSION

The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established.  To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction.  See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365 (2008)).  When a mandatory injunction is sought – one that goes beyond simply maintaining the status quo during litigation – the moving party bears a "doubly demanding" burden and must establish that the law and facts clearly supports injunctive relief.  See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc).  Mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." Id. (internal quotations omitted).

To the extent prior Ninth Circuit cases suggest a lesser standard by focusing solely on the possibility of irreparable harm, such cases are "no longer controlling, or even viable." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  Under Winter, the proper test requires a party to demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public interest.  See Stormans, 586 F.3d at 1127 (citing Winter, 129 S.Ct. at 374).  The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied.'"  See Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir.

2013) (quoting Alliance for the Wild Rockies v. Cottress, 632 F.3d 1127, 1135 (9th Cir. 2011)).

To prevail on a motion for injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." Pac. Radiation Oncology, LLC v. Queen's Medical Ctr., 810 F.3d 631, 636 (9th Cir. 2015). Thus, there must be a nexus between the claims raised in the motion and the claims in the underlying complaint itself. See id. This nexus is satisfied where the preliminary injunction would grant "relief of the same character as that which may be granted finally." See id. (quoting De Beers Consol. Mines, 325 U.S. 212, 220 (1945)).

The Court cannot issue an order against individuals who are not parties to the action. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969). Moreover, if an inmate is seeking injunctive relief with respect to conditions of confinement, the prisoner's transfer to another prison renders the request for injunctive relief moot, unless there is some evidence of an expectation of being transferred back. See Prieser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.3d 517, 519 (9th Cir. 1991) (per curiam). Finally, pursuant to the Prison Litigation Reform Act, any injunction with respect to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); see also Wonnacott v. Heehn, 2021 WL 970453 (D. Oregon 2021).

In his motion for injunctive relief, Plaintiff seeks a preliminary injunction "enjoining. . . defendants from continuing to deny plaintiff adequate pain medication and a L4-L5-S1 lumbar fusion as recommended by Neurosurgeon Thaiyananthan and ordered by plaintiff's primary care provider defendant Lehil. . . ." ECF No. 2, pg. 1. According to Plaintiff, absent the surgery, his urinary incontinence, which is currently temporary and requires Plaintiff to use a catheter, may become permanent. See id. at 3. Attached to Plaintiff's motion are medical records from San Joaquin General Hospital, including a record from June 30, 2023, documenting Dr. Thaiyananthan's recommendation for an L4-L5-S1 anterior lumbar interbody fusion. See id. at 17-18.

///

At the outset, the Court observes that Plaintiff is seeking mandatory injunctive relief that goes beyond simply maintaining the status quo of this litigation. The current status quo is that Plaintiff has been denied surgery. Plaintiff seeks a court order mandating that this status quo be changed by providing him surgery. Because Plaintiff seeks a mandatory injunction, which is disfavored. Plaintiff carries the high burden of showing that the law and facts clearly entitle Plaintiff to the relied requested.

As to the likelihood of irreparable harm, the Court finds that Plaintiff has not presented evidence showing that he is clearly entitled to relief. Plaintiff suffers from a condition which has resulted in at least one physician recommending surgery, though another medical provider denied surgery. Further, this condition appears to be causing Plaintiff temporary urinary incontinence which could become permanent. Certainly, permanent urinary incontinence would constitute a significant irreparable harm. This harm, however, appears to be speculative in that it is a harm that <u>may</u> occur absent surgery. In other words, there is no clear evidence establishing that Plaintiff is likely to suffer permanent urinary incontinence absent fusion surgery recommended by Dr. Thayananthan.

Turning to the merits, the Court has very limited information before it. As evidenced by the documentation included with Plaintiff's motion, Dr. Thayananthan recommended fusion surgery on June 30, 2023. According to the first amended complaint, though Defendant Lehil agreed with Dr. Thayananthan's recommendation for fusion surgery, a request for services (RFS) to provide that surgery was denied by other (non-defendant) prison medical officials. It is unknown why the RFS was denied.

To the extent Plaintiff's underlying claim is based on a difference of medical opinion regarding surgery – which appears to be the case given that at least one doctor recommended the surgery and another non-defendant prison official denied the RFS – Plaintiff would not be able to prevail on the merits. See <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996). To the extent Plaintiff's claim is based on a delay in providing the surgery, Plaintiff cannot prevail on the merits because, on the current record, Plaintiff has not shown that alternative courses of treatment are medically unacceptable under the circumstances and were

chosen in conscious disregard of an excessive risk to the prisoner's health.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

        The Court cannot say that Plaintiff has presented evidence showing that he is clearly entitled to disfavored mandatory injunctive relief.  The Court will, however, recommend that Plaintiff be provided an opportunity to renew his motion once Defendants have appeared in the action.

### III.  CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

    1.    It is ORDERED that the Clerk of the Court is directed to randomly assign a District Judge to this case.

    2.    It is RECOMMENDED that Plaintiff's motion for injunctive relief, ECF No. 2, be DENIED without prejudice to renewal once Defendants appear in this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 6, 2024

                                                          DENNIS M. COTA
                                                          UNITED STATES MAGISTRATE JUDGE