**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAMON ANDERSON, | No.  2:24-CV-0483-DJC-DMC-P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| SMITH, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint.  See ECF No. 36.  Plaintiff has filed an opposition brief.  See ECF No. 38. Defendants have filed a reply.  See ECF No. 40.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520

1

(1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

///

2

## I. BACKGROUND

### A. Procedural History

Plaintiff initiated this action with a pro se complaint filed on February 15, 2024. See ECF No. 1. Plaintiff then filed a first amended complaint on May 9, 2024. See ECF No. 11. On June 6, 2024, the Court directed Plaintiff to file a second amended complaint. See ECF No. 12. Following screening of the first amended complaint, Plaintiff filed a second amended complaint pursuant to the Court's order on December 13, 2024. See ECF No. 27. On September 15, 2025, Defendants filed this pending motion to dismiss, arguing that the second amended complaint fails to state claims upon which relief can be granted. See ECF No. 36. Plaintiff filed an opposition to the motion to dismiss on October 21, 2025. See ECF No. 38. Defendants' reply to Plaintiff's opposition was filed on November 5, 2025. See ECF No. 40.

### B. Plaintiff's Allegations

This action currently proceeds on Plaintiff's second amended complaint. See ECF No. 27. Plaintiff names the following as defendants: (1) Kevin Smith, employed at physician with the California Department of Corrections and Rehabilitation (CDCR); (2) Michael Ullery, employed as chief physician at Mule Creek State Prison (MCSP); (3) Bhupinder Lehil, employed as a physician at MCSP; (4) Wesley Vaughn, employed as a physician at MCSP; (5) Dr. Wong1, employed as a physician at MCSP; (6) Peter Lee2, employed as a physician at MCSP; (7) Kevin Yang, employed at MCSP; and (8) Klatt, employed as a nurse at MCSP. See id. at 2-3.

Plaintiff asserts he had six back surgeries, including laminectomies and discectomies. See id. at 6. Prior to June 2023, Plaintiff asserts he had minimal pain and was able to live an independent and healthy lifestyle, including exercising and attending college and self-help groups. See id. In June 2023, Plaintiff claims he began experiencing "agonizing and debilitating low back pain," numbness in his groin and left leg, bilateral nerve pain in both legs, weakness in his left leg, and intermittent urinary incontinence. See id. According to Plaintiff, he was sent to the emergency room on June 8, 2023, due to these symptoms. See id. Plaintiff alleges that after an MRI was performed at the hospital, the doctor at the emergency room discharged him with pain medication and a referral for a neurosurgeon consult, but he never

received the pain medication.  See id.

Plaintiff next claims he was then seen by Defendant Lehil, to whom he described his pain and symptoms, such as inability to sleep, bathe, or clean himself after a bowel movement. See id.  Plaintiff maintains he also expressed concern because these symptoms mirrored previous symptoms that had required him to have surgery to remove "scar-tissue that was affecting the S-1 [and] S-2 nerves." Id.  Plaintiff alleges Defendant Lehil told him that "a referral to see a Neurosurgeon would be made and a tapering dose of prednisone would be given to [P]laintiff for 14 days." Id.  Plaintiff alleges he responded to Defendant Lehil by explaining that he is a recovering heroin addict and needs to have his back "fixed ASAP" because he "did not want to have to resort to hard pain medication." Id. at 6-7.  Plaintiff asserts that Defendant Lehil ordered a cane and wheelchair for him.  See id. at 7.

Plaintiff next alleges that, on June 30, 2023, he was transported to see Dr. Thaiyananthan, who is a neurosurgeon.  See id.  Plaintiff asserts that Dr. Thaiyananthan found that a lumbar fusion surgery would "help [P]laintiff and improve his quality of life." Id.  Plaintiff States that he asked how long it would take to receive the surgery and that Dr. Thaiyananthan replied that "I am ordering it right now." Id.  Plaintiff claims that, upon his return to prison, he then saw Defendant Lehil again, who was his primary care provider, who said that the "surgery will happen soon" and submitted a Request for Service (RFS) that day and stated that it would happen "as soon as headquarters approves it." Id.  Plaintiff states he asked why headquarters needed to approve the surgery given that Defendant Lehil agreed with the surgery recommendation.  See id.  Plaintiff asserts Defendant Lehil responded that "it's about the money and I have no control over the way things work." Id.

Plaintiff next claims that the RFS was submitted on July 10, 2023.  See id. Plaintiff states that Defendant Lehil did not include all of Plaintiff's symptoms on the RFS, including the activities Plaintiff was unable to perform, such as "sleeping, getting dressed, and finishing the semester of college," and the numbness in Plaintiff's groin and periodic urinary incontinence in the RFS.  Id.  According to Plaintiff, headquarters responded to the RFS on July 10, 2023, stating "needs proper pain management [sic] What is the success rate of the

4

Neurosurgeon? Unclear what will be achieved from this surgery and what will be the benefits to the patient?" Id. Plaintiff states that he believes Defendant Smith is the official at headquarters who wrote this response. See id. Plaintiff claims that headquarters never examined or spoke to Plaintiff, and Plaintiff questions how the headquarters decision trumps his doctor's opinion. See id. Plaintiff asserts that, from July 10, 2023, to October 20, 2023, he was experiencing "ongoing torture" and was unable to sleep more than "an hour or two at a time." Id. Plaintiff states that he was pushed in his wheelchair to the "A Facility medical clinic" and "begged" Defendant Klatt for help. Id. Plaintiff claims that Defendant Klatt told him that "when [P]laintiff could not take it no [sic] more that he [sic] [D]efendant Klatt would send him out to the hospital." Id. at 7-8. Plaintiff asserts that Defendant Klatt told him the surgery would happen soon "consistently [sic]." Id. at 8. Plaintiff asserts that his only "piece [sic] of mind" was Defendant Klatt's promise and that, at times, Plaintiff would wish his life would end. Id.

Plaintiff asserts that through October he experienced suicidal desires triggered by his pain. See id. Plaintiff states that he then told Defendant Klatt he was ready to go to the hospital but Defendant Klatt "did nothing but send [P]laintiff to talk to an unknown Doctor who did nothing but treat [P]laintiff as a drug seeking nuisance." Id. Next, Plaintiff claims that, around October 1, 2023, his urinary incontinence was no longer occasional, and he began having to use a ". . .catheter, hose and bag." Id. Plaintiff states that he alerted Defendant Lehil and Defendant Klatt about the incontinence. See id. Plaintiff asserts he filed a 602 [inmate grievance]. See id. Plaintiff claims that his request for surgery was denied by the institution, and he sent the 602 to exhaust administrative remedies. See id. According to Plaintiff, he still has not received a response and, thus, filed this claim due to the risk of irreparable harm. See id.

Plaintiff alleges Defendant Lehil did not inform him that the surgery request was denied until October 20, 2023. See id. Plaintiff states that he then informed Defendant Lehil that he wrote the 602 "about the situation and the pain was nothing but torture" and that the course of treatment that Defendant Lehil is continuing "is known to be ineffective and that is considered deliberate indifference." Id. Plaintiff asserts that Defendant Lehil then sent him to see Dr. Thaiyananthan again who told Plaintiff "he dont [sic] understand why the surgery was not done

5

yet and he will order it again." Id.

Plaintiff states that he was then seen by Defendant Wong a few days later and was told Defendant Lehil will return in a few days. See id. Plaintiff asserts Defendant Wong never physically examined him. See id. Plaintiff states that, on October 26, 2023, Defendant Lehil told him that another RFS had to be ordered because "Defendant Ullery denied the last RFS when [D]efendant Wong put in [P]laintiff's chart that there was nothing wrong with [P]laintiff." Id. at 8-9. Plaintiff asserts that there was no reason for Defendant Wong to see Plaintiff because he had just been seen by his primary care provider. See id. at 9. Plaintiff claims that Defendant Wong conspired with Defendants Vaught, Ullery, Smith, and Klatt to "cover up their liability when refusing to allow the surgery [to] occur for [P]laintiff" because there was "no reason for [D]efendant Wong to see [P]laintiff and that [D]efendnat Wong lied in his report stating he examined [P]laintiff." Id.

Next, Plaintiff states that Defendant Lehil has submitted two more RFS forms for surgery since October 23, 2023. See id. Plaintiff states that he has been sent to Dr. Thaiyananthan for the third time, who has recommended surgery yet again. See id. According to Plaintiff, Defendant Vaughn's response to Plaintiff's 602 states that "the primary care provider is responsible to determine the necessity for all specialty recommendations; however, the primary care provider is under no obligation to provide the recommended treatment and may choose an alternative." Id. Plaintiff asserts that this means that if his primary care provider agrees with the specialist recommendation and does not choose an alternative that he should have received the surgery. See id.

Plaintiff alleges that he has an uncontested serious medical condition from which he has been suffering "unnecessary wanton infliction of pain for 21 months that severely affect his daily activities." Id. Plaintiff states that Defendant Lehil acknowledged that Plaintiff needed to see an advanced doctor and that Plaintiff was sent to Dr. Thaiyananthan three times over the course of eighteen to nineteen months who recommended the same surgery every time. See id. Plaintiff claims that Defendant Lehil knew about the serious nature of Plaintiffs condition, symptoms, pain, and possibility of worsening. See id. Plaintiff alleges that Defendant Lehil

6

submitted multiple RFSs with inaccurate information, and never appealed his superior's decision, or administered a different course of treatment. See id. Plaintiff states that Defendants Smith, Ullery, Vaughn, Lee, and Yang are all voting members of the medical review committee and thus are "responsible for the ongoing torture which violates [Pl]laintiff's 8 amendment rights." Id. at 9-10.

## II. DISCUSSION

Defendants argue in their motion to dismiss that Plaintiff's second amended complaint fails to allege sufficient facts to sustain an Eighth Amendment medical deliberate indifference claim. See ECF No. 36. For the reasons discussed below, the Court agrees and will recommend that Plaintiff's medical deliberate indifference claim against all Defendants be dismissed and that leave to amend be granted.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . .embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

///

///

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  However, a claim involving alternate courses of

8

treatment may succeed where the plaintiff shows: (1) the chosen course of treatment was medically unacceptable under the circumstances; and (2) the alternative treatment was chosen in conscious disregard of an excessive risk to the prisoner's health.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

### A.   Deliberate Indifference Claim Against Defendants Lehil and Klatt.

Defendants argue that allegations made against Defendant Lehil in Plaintiff's second amended complaint are insufficient to state a claim for medical deliberate indifference. See ECF No. 36, pgs. 6-7.  According to Defendants:

> . . . Plaintiff was seen, consulted with, cared for, and the appropriate referrals were made by Defendant Lehil. More specifically, Plaintiff was referred by Defendant Lehil for evaluation to neurosurgeon on multiple occasions. Even if Defendant Lehil did not include all specific symptoms that Plaintiff wanted in the RFSs, such allegations cannot establish a claim for medical indifference because there is no doubt from the face of both amended complaints and their attachments that Defendant Lehil provided continuous care and evaluations of Plaintiff as his PCP. Therefore, the Eighth Amendment claim against Defendant Lehil for incorrectly documenting Plaintiff's symptoms should be dismissed.

ECF No. 36, pg. 8.

The Court agrees with Defendants that the second amended complaint fails to allege sufficient supporting facts to demonstrate that Defendant Lehil was deliberately indifferent to Plaintiff.  More specifically, Plaintiff's allegations reflect that he was in fact provided treatment by Defendant Lehil.  See ECF No. 27, pgs. 6-7.  Plaintiff claims that Defendant Lehil made a referral to see a neurosurgeon, ordered a cane and a wheelchair for Plaintiff, and put a request for surgery.  See id.  Moreover, Plaintiff confirms that Defendant Lehil submitted three requests for surgery.  See id. at 9.  These allegations indicate that Plaintiff was provided with some level of treatment and undercut the claim that Defendant Lehil was deliberately indifferent.

Similarly, Defendants argue that an Eighth Amendment claim against Defendant Klatt fails because she made the appropriate referral for evaluation by a doctor.  See ECF No. 36, pg. 8. The Court agrees.  Plaintiff alleges in his second amended complaint that when he told Defendant Klatt he was ready to go to the hospital, Defendant Klatt "did nothing but send [P]laintiff to talk to an unknown Doctor."  ECF No. 27, pg. 8.  Although Plaintiff disagrees with

9

the adequacy of Defendant's response, Plaintiff's allegations nonetheless demonstrate that Defendant Klatt took some action by referring Plaintiff to see a doctor.  Such conduct is inconsistent with the claim of deliberate indifference.

**B.      Conspiracy Claim Against Defendants Wong, Vaughn, Ullery, Smith, and Klatt**

Defendants argue that Plaintiff's second amended complaint relies on conclusory statements and fails to allege an Eighth Amendment claim of conspiracy between Defendants Wong, Vaughn, Ullery, Smith, and Klatt to cover up liability when refusing to allow Plaintiff surgery.  See ECF No. 36, pg. 9.

"To prove a conspiracy under [§] 1983, the [plaintiff] must show an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each must at least share the common objective of the conspiracy." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc) (citations and internal quotation marks omitted); see also Crowe v. Cnty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002); Mendocino Envt'l Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301–02 (9th Cir. 1999); Gilbrook v. City of Westminster, 177 F.3d 839, 856–57 (9th Cir. 1999); Taylor v. List, 880 F.2d 1040, 1048 (9th Cir. 1989). Conclusory allegations are insufficient to state a claim of conspiracy. See Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 783–84 (9th Cir. 2001).

Plaintiff asserts in his complaint that "[D]efendant Wong put in [P]laintiff's chart that there was nothing wrong with [P]laintiff," and the fact that Defendant Wong lied in the report demonstrates the conspiracy between Defendants.  ECF No. 27, pgs. 8-9.  The Court agrees with Defendants that the second amended complaint fails to plead sufficient non-conclusory facts that would establish an Eighth Amendment claim of conspiracy and that Defendants formed an agreement to act with deliberate indifference towards Plaintiff's medical needs.

The Court will recommend that Defendants' motion to dismiss be granted and that Plaintiff be provided leave to amend his conspiracy claim.

///

C.      **Deliberate Indifference Against Defendants Smith, Ullery, Vaughn, Lee, and Young as Members of the Medical Committee**

Defendants argue that Plaintiff's second amended complaint, when considered in conjunction with attached documents upon which the second amended complaint necessarily relies, fails to allege a cognizable medical indifference claim under the Eighth Amendment against Defendants Smith, Ullery, Vaughn, Lee, and Young as voting members of the Statewide Medical Authorization Review Team (SMART).  See ECF No. 36, pg. 9.  Additionally, according to Defendants:

> . . . Plaintiff's attached exhibit of the CCHCS response on February 21, 2024 provides the reason for the multiple denials of the RFSs for spinal surgery. (*Id.* at 16.) It states:
>
> > "Records indicate a primary care provider has submitted multiple Request for Services orders for spine surgery; however, the Statewide Medical Authorization Review Team denied these requests for various reasons including needing proper pain management, noncompliance with conservative care, multiple urine toxicology screens showing positive for amphetamines which cause concern for postoperative recuperation and recover, your history of six prior spine surgeries, and your activities of daily living not being clearly impacted."
>
> ECF No. 36, pg. 10.

The Court agrees with Defendants that Plaintiff's allegations fail to establish liability simply because certain defendants were members of the Medical Committee.  In Plaintiff's second amended complaint, Plaintiff alleges that Defendants Smith, Ullery, Vaughn, Lee, and Yang are all voting members of the medical review committee and thus are "responsible for the ongoing torture which violates [P]laintiff's 8th amendment rights."  ECF No. 27, pgs. 9-10.  Defendants correctly state that Plaintiff fails to provide sufficient facts in the second amended complaint to establish that each Defendant was a member of the medical committee that denied his request for the surgery.

///

///

///

11

Additionally, the Court may consider the medical records Plaintiff attaches to the second amended complaint because they are a document whose contents are alleged in the complaint and whose authenticity no party questions.  See Branch, 14 F.3d at 454.  These records indicate that each denial by the Medical Committee provided an explanation for that decision, demonstrating that the evaluation of the request occurred and that the request was denied based on a difference of medical opinion.  A difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In opposition to the motion to dismiss, Plaintiff argues that Defendants denied surgery without valid medical justification and that goes beyond the difference of opinion.  See ECF No. 38, pg. 2.  However, Plaintiff still fails to demonstrate that Defendants chose this course of action with conscious disregard for his well-being.  Defendants correctly refer to Plaintiff's allegations in the second amended complaint, that the denial was accompanied with the following reasoning: "What is the success rate of the neurosurgeon? Unclear what will be achieved from this surgery and what will be the benefits to the patient? [sic]."  ECF No. 27, pg. 7.  As a result, Plaintiff fails to demonstrate that the denial of the request for surgery was the result of subjective deliberate indifference of Defendants.

The Court will recommend granting motion to dismiss as to Plaintiff's claims against Defendants Smith, Ullery, Vaughn, Lee, and Young as voting members of the MAR or SMART medical review committee.  The Court will, however, also recommend that Plaintiff be granted leave to amend to cure the deficiencies identified above.

///

///

///

///

///

///

///

## III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' motion to dismiss, ECF No. 36, be granted and that the second amended complaint be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 8, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13