**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAMON ANDERSON,<br>Plaintiff,<br>v.<br>KEVIN SMITH, et al.,<br>Defendants. | No. 2:24-cv-0483-DJC-ICD-P<br><br><u>ORDER</u><br>and<br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Plaintiff's third amended complaint and Defendants' motion to screen the third amended complaint, ECF Nos. 50, 51.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. <u>See</u> 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated, even if the litigant was subsequently released from custody. <u>See Olivas v. Nevada ex rel. Dep't of Corr.</u>, 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915A(b)(1), (2). This Court has previously screened the complaints. <u>See</u> ECF Nos. 10, 12, 15, 31.

## I. BACKGROUND

### A. <u>Procedural History</u>

On July 15, 2024, the Court determined that service of Plaintiff's first amended complaint was appropriate for Defendants Smith, Ullery, Lehil, Vaughn, Yang, and Klatt. ECF No. 15. Defendants waived service and responded to the first amended complaint by way of a motion to

dismiss filed on October 15, 2024. ECF No. 23. Plaintiff then filed a second amended complaint as-of-right under Federal Rule of Civil Procedure 15. ECF No. 27. This rendered Defendants' motion to dismiss the first amended complaint moot. ECF No. 29. Thereafter, the Court granted Defendants' request to screen the second amended complaint and found the second amended complaint appropriate for service on existing defendants as well as a new defendant – Wong. ECF No. 31.

Defendant Wong waived service and all defendants responded to the second amended complaint by way of a motion to dismiss filed on September 15, 2025. ECF No. 36. On April 8, 2026, the Court issued findings and recommendations that the second amended complaint be dismissed with leave to amend. ECF No. 41. The findings and recommendations were adopted in full by the District Judge on June 30, 2026, and Plaintiff was directed to file a third amended complaint. ECF No. 46. Plaintiff then filed the operative third amended complaint on September 21, 2026, ECF No. 50, and Defendants filed the pending motion for screening of the third amended complaint on October 16, 2026, ECF No. 51.

**B. Plaintiff's Allegations**

This action currently proceeds on Plaintiff's third amended complaint. See ECF No. 50. Plaintiff names the following as defendants: (1) Bhupinder Lehill, employed as a physician at Mule Creek State Prison (MCSP); (2) Kevin Smith, employed as a physician at MCSP; (3) Dr. Wong, employed as a physician at MCSP; and (4) Wesley Vaughn, employed as a physician at MCSP. See id. at 2–3.

Plaintiff asserts he had six back surgeries, including laminectomies and discectomies. See id. at 13. Prior to June 2023, Plaintiff asserts he had minimal pain and was able to live an independent and healthy lifestyle, including exercising and attending college and self-help groups. See id. In June 2023, Plaintiff claims he began experiencing "agonizing and debilitating low back pain," numbness in his groin and left leg, bilateral nerve pain in both legs, weakness in his left leg, and intermittent urinary incontinence. See id. He was sent to the emergency room on June 8, 2023, due to these symptoms. See id. Plaintiff alleges that after an MRI was performed at the hospital, the doctor at the emergency room discharged him with pain medication and a referral

for a neurosurgeon consult, but he never received the pain medication. See id.

Plaintiff next claims he was then seen by Defendant Lehill, to whom he described his pain and symptoms, such as an inability to sleep, bathe, or clean himself after a bowel movement. See id. Plaintiff maintains he also expressed concern because these symptoms mirrored previous symptoms that had required him to have surgery to remove "scar-tissue that was affecting the S-1 [and] S-2 nerves." Id. Plaintiff alleges Defendant Lehill told him that "a referral to see a Neurosurgeon would be made and a tapering dose of prednisone would be given to [P]laintiff for 14 days." Id. Plaintiff alleges he responded to Defendant Lehill by explaining that he is a recovering heroin addict and needs to have his back "fixed ASAP" because he "did not want to have to resort to hard pain medication." Id. Plaintiff asserts that Defendant Lehill ordered a cane and wheelchair for him. See id.

Plaintiff next alleges that, on June 30, 2023, he was transported to see Dr. Thaiyananthan, who is a neurosurgeon. See id. Plaintiff asserts that Dr. Thaiyananthan found that a lumbar fusion surgery would "help [P]laintiff and improve his quality of life." Id. Plaintiff states that he asked how long it would take to receive the surgery and that Dr. Thaiyananthan replied, "I am ordering it right now." Id. Plaintiff claims that, upon his return to prison, he saw Defendant Lehill again, who was his primary care provider, who said that the "surgery will happen soon" and submitted a Request for Service (RFS) that day, stating that it would happen "as soon as headquarters approves it." Id. Plaintiff states he asked why headquarters needed to approve the surgery given that Defendant Lehill agreed with the surgery recommendation. See id. Plaintiff asserts Defendant Lehill responded, "it's about the money and I have no control over the way things work." Id. Plaintiff next claims that the RFS was submitted on July 10, 2023. See id. Plaintiff states that Defendant Lehill did not include all of Plaintiff's symptoms on the RFS, including the activities Plaintiff was unable to perform, such as "sleeping, getting dressed, and finishing the semester of college," and the numbness in Plaintiff's groin and periodic urinary incontinence. Id. at 14. According to Plaintiff, headquarters responded to the RFS on July 10, 2023, stating, "needs proper pain management [sic] What is the success rate of the Neurosurgeon? Unclear what will be achieved from this surgery and what will be the benefits to the patient?" Id. Plaintiff claims that

headquarters never examined or spoke to Plaintiff, and Plaintiff questions how the headquarters decision trumps his doctor's opinion. See id.

Plaintiff asserts that, from July 10, 2023, to October 20, 2023, he was experiencing "ongoing torture" and was unable to sleep more than "an hour or two at a time." Id. Plaintiff states that he was pushed in his wheelchair to "a Facility medical clinic" and "begged" Dr. Klatt for help. Id. Plaintiff claims that Dr. Klatt told him that "when [P]laintiff could not take it no [sic] more that he [sic] [Dr.] Klatt would send him out to the hospital." Id. Plaintiff asserts that Dr. Klatt told him the surgery would happen soon "consistently [sic]." Id. Plaintiff asserts that his only "piece [sic] of mind" was Dr. Klatt's promise and that, at times, Plaintiff would wish his life would end. Id.

Next, Plaintiff claims that, around October 1, 2023, his urinary incontinence was no longer occasional, and he began having to use a ". . .catheter, hose and bag." Id. Plaintiff states that he alerted Defendant Lehill and Dr. Klatt about the incontinence. See id. Plaintiff asserts he filed a 602 [inmate grievance]. See id. Plaintiff claims that his request for surgery was denied by the institution, and he sent the 602 to exhaust administrative remedies. See id. at 15. Plaintiff alleges Defendant Lehill did not inform him that the surgery request was denied until October 20, 2023. See id. Plaintiff states that he then informed Defendant Lehill that he wrote the 602 "about the situation and the pain was nothing but torture" and that the course of treatment that Defendant Lehill is continuing "is not effective" to the point of deliberate indifference. Id. Plaintiff asserts that Defendant Vaughn then sent him to see Dr. Thaiyananthan again, who told Plaintiff "he [didn't] understand why the surgery was not done yet and he will order it again." Id. Plaintiff states that he was then seen by Defendant Wong a few days later and was told Defendant Vaughn will return in a few days. See id. Plaintiff asserts Defendant Wong never physically examined him. See id. Plaintiff states that, on October 26, 2023, Defendant Vaughn told him that another RFS had to be ordered because "Defendant Ullery denied the last RFS when [D]efendant Wong put in [P]laintiff's chart that there was nothing wrong with [P]laintiff." Id. Plaintiff claims that Defendant Wong conspired with Defendants Vaughn, Ullery, and Klatt to "maliciously stop [P]laintiff's surgery or it was to cover up their liability when they were questioned about the

602." Id.

Plaintiff asserts that in mid-November, Defendant Lehill told Plaintiff the RFS was denied again. Id. Plaintiff told Defendant Lehill that his incontinence had become permanent, and he should be sent to a urologist. Defendant Lehill said, "we are done here now go." Id.
In January, Plaintiff saw Defendant Lehill and told the Defendant that he would sue the Defendant. Id. at 16. Defendant Lehill told Plaintiff, "I am shipping you out so another doctor has to deal with you." A few days later Plaintiff was told he was being transferred because Defendant Lehill ordered it. Id.

Plaintiff realleges that from June 2023 to November 2024, the Defendants refused to try different treatments. Id. at 17. Plaintiff repeatedly begged Defendant Lehill to do something to help him, and Defendant Lehill put in several requests for services for the recommendation that the neurosurgeon gave for Plaintiff to receive ALIF fusion. Id.

## II. DISCUSSION

Defendants previously argued in their motion to dismiss that Plaintiff's second amended complaint failed to allege sufficient facts to sustain an Eighth Amendment medical deliberate indifference claim. See ECF No. 36. The claims were dismissed while Plaintiff was granted leave to file an amended complaint. ECF No. 46. Having reviewed the third amended complaint, the Court finds that Plaintiff has not cured the deficiencies noted in this Court's previous findings and recommendations, ECF No. 41, and now recommends that Plaintiff's third amended complaint be dismissed without further leave to amend and with prejudice.

### A. Deliberate Indifference Claim Against Defendants Lehill and Klatt

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . .embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing,

shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. The Ninth Circuit's test for deliberate indifference requires the plaintiff to show "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991) overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Plaintiff must also show the defendant's response to the medical need was deliberately indifferent. Jett, 439 F.3d at 1096. To satisfy the high standard for deliberate indifference, a plaintiff must demonstrate "(a) a purposeful act or failure to respond to [his] pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096.

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint, 801 F.2d at 1111. Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). However, a claim involving alternate courses of treatment may succeed where the plaintiff shows: (1) the chosen course of treatment was medically unacceptable under the circumstances; and (2) the alternative treatment was chosen in conscious disregard of an excessive risk to the prisoner's health. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

Plaintiff's allegations of deliberate indifference to his medical needs are not sufficient to state claims against Defendant Lehill. Plaintiff's allegations reflect that that he was in fact provided treatment by Defendant Lehill. See ECF No. 50 at 13, 15. Plaintiff claims that Defendant Lehill made a referral to see a neurosurgeon, ordered a cane and a wheelchair for Plaintiff, and put a request for surgery. See id. These allegations indicate that Plaintiff was provided with some level of treatment and undercut the claim that Defendant Lehill was deliberately indifferent, on the contrary, Defendant Lehill attempted to get Plaintiff his medical treatment. See Jett, 439 F.3d at 1096. Plaintiff's only allegations against Dr. Klatt are that he told the doctor about his incontinence and that Klatt told Plaintiff that surgery would happen soon; Dr. Klatt is not named as a defendant in Plaintiff's current complaint. Id. at 14. Plaintiff claims that an institutional decision was issued which denied Plaintiff his request for surgery, indicating that the lack of surgery was due to institutional process, not Klatt's actions.

### B. Conspiracy Claim Against Defendants Wong, Vaughn, Ullery, Smith, and Klatt

Plaintiff's third amended complaint relies on conclusory statements and fails to allege an Eighth Amendment claim of conspiracy between Defendants Wong and Vaughn to cover up liability when refusing to allow Plaintiff surgery. See ECF No. 50 at 15.

"To prove a conspiracy under [§] 1983, the [plaintiff] must show an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need

not know the exact details of the plan, but each must at least share the common objective of the conspiracy." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc) (citations and internal quotation marks omitted); see also Crowe v. Cnty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002); Mendocino Envt'l Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301–02 (9th Cir. 1999); Gilbrook v. City of Westminster, 177 F.3d 839, 856–57 (9th Cir. 1999); Taylor v. List, 880 F.2d 1040, 1048 (9th Cir. 1989). Conclusory allegations are insufficient to state a claim of conspiracy. See Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 783–84 (9th Cir. 2001).

Plaintiff states that, on October 26, 2023, Defendant Vaughn told him that another RFS had to be ordered because "Defendant Ullery denied the last RFS when [D]efendant Wong put in [P]laintiff's chart that there was nothing wrong with [P]laintiff." ECF No. 50 at 15. Plaintiff has again realleged his prior complaint and pled only conclusory facts that do not establish Defendants formed an agreement to act with deliberate indifference towards Plaintiff's medical needs.

**C. Retaliation**

Plaintiff alleges a claim of retaliation against Defendants Lehill, Smith, Vaughn, and possibly others for denying his medical requests after he filed numerous complaints. See ECF No. 50 at 16.

To state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in

order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Here, Plaintiff appears to claim he was retaliated against when those responsible for overseeing his medical care denied him the care he sought. See ECF No. 50 at 16. Plaintiff fails to establish a retaliation claim for the same general reasons he fails to state a claim of indifference to medical needs: the record reflects that each denial by the Medical Committee provided an explanation for that decision, demonstrating that the evaluation of the request occurred and that the request was denied based on a difference of medical opinion. The Court finds that the actions taken (denial of medical care) were based on reasoned medical opinions and therefore were not retaliation for protected actions. See ECF No. 27 at 7. A difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

///

///

///

///

## III. CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, and as Plaintiff failed to suitably amend the complaint after previously being given leave to amend, Plaintiff is not entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned orders and recommends as follows:

1. It is ORDERED that Defendants' request for screening, ECF No. 51, is granted.

2. It is RECOMMENDED that Plaintiff's third amended complaint, ECF No. 50, be dismissed without further leave to amend and with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 25, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE